## Gay, et al. v. Davidson, et al.

(Decided November 9, 1926.)

### Appeal from Clark Circuit Court.

1. Warehousemen.—Delivery of hemp to warehouse and mutual agreement of parties to contract for storage and insurance would be sufficient consideration for entire contract.

2. Warehousemen.—Contract by warehouseman to insure property stored is enforceable, and breach thereof gives owner cause of action for value of property destroyed by fire.

3. Warehousemen.—Duty of bailee or warehouseman to insure goods for bailor's benefit may arise from bailor's instructions, contract of bailment, trade, custom, or usage or habit of dealing between parties.

4. Warehousemen—Request to Insure Does Not Require Warehouseman to do so Where no Funds are Provided.—Simple request to insure or warehouseman's effort to comply therewith will not require him to do so, where no funds are provided or there have been no previous dealings between parties nor any goods on consignment from which he may reimburse himself, but there must have been an undertaking or promise to insure, made at time of contract and so intended by parties.

5. Warehousemen—Promise to Insure Goods Stored is Implied, where Agent has Been Used to Effect Insurance or has Funds or General Usage is to do so.—Promise to insure goods stored is implied where agent has been used to effect insurance or has funds or effects on hand, or bill of lading contains order to insure, or general usage is to insure.

6. Warehousemen.—Evidence held sufficient to take case to jury and sustain verdict for plaintiff on issue of defendant warehouseman's promise to insure hemp stored.

7. Pleading—Paragraph of Counterclaim, Affirmatively Alleging Nonexistence of Contract to Insure, Held Demurrable as Mere Affirmative Traverse of Allegations of Petition Denied in Answer.—In action against warehouseman for value of hemp destroyed by fire, paragraph of counterclaim, affirmatively alleging that there was no contract to insure nor any request therefor by plaintiffs, held bad on demurrer, as merely traversing allegations of petition denied in answer and neither making nor tendering any additional issue.

8. Warehousemen.—In action on express contract to insure property stored, court properly sustained demurrer to paragraph of counterclaim pleading custom among warehousemen not to insure.

9. Warehousemen—Instruction on Custom Among Warehousemen Not to Insure Property Stored Held Properly Refused, in View of Instructions on Express Contract to Insure.—Where instructions authorized jury to find for plaintiff only if express contract to insure property stored was made, as claimed, court properly refused to instruct on existence of custom among warehousemen not to insure.

MARCUS C. REDWINE for appellant.

J. SMITH HAYS and GEORGE W. VAUGHN for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

David Gay was a public warehouseman in the city of Winchester. Charles Gentry was a landowner and William Davidson was his tenant. In the year 1922 Gentry and Davidson stored 15,877½ pounds of hemp in Gay's warehouse. Some time later the warehouse and contents were destroyed by fire, there being no insurance covering this property. Afterwards Davidson and Gentry brought suit against Gay to recover its value, alleging that "David Gay, at the time of the delivery of the hemp to him, promised and agreed with the defendant that he would take out and maintain insurance upon the hemp stored with him," and in an amended petition further alleging "that said David Gay agreed and promised to store said hemp and keep it insured against loss or damage by fire at a fair consideration charged by the defendant, to-wit: 75c per ton per month." These allegations were controverted and a counterclaim set up for the storage charges. Gay died before the trial and the action was revived against his executor, resulting

in a judgment for plaintiffs for the sum of $718.51, and the executor appeals.

The facts are these: Gentry and Davidson were undecided as to what disposition they would make of their crop; they had information that they could either sell to Gay or store it in his warehouse, and on the 28th of July delivered it to him at that place. After it was weighed and placed in the warehouse, they claim that they met Mr. Gay at his office.

As to this Charles Gentry testified: "I talked to Mr. Gay about the price of hemp; he offered me 6½c and the price was so low that I told him we would not take it, that we would just leave it in storage; he said, 'then you want to leave it in storage,' and he asked me if I wanted insurance on my hemp and I told him that I did, and I left him with the understanding that he was to insure the hemp."

On cross-examination he said: Q. "Mr. Gay never promised you to store that hemp at 75c per ton per month and insure it did he?" A. "He promised to insure it, but he never said anything about what the charges would be for the storage." Q. "Did you say anything about the charges for insurance?" A. "I knew that he did not fix the price for the insurance, the insurance people done that; he did promise to insure it, and I never was more certain of any one act than of that; that was the last words between us."

Mr. Davidson testifies that: "Mr. Gentry was in the office and Mr. Gay and my son, they were just talking about one thing and another, talking about the hemp too, and I don't know whether there was anything said about selling the hemp or not, we just told them we wanted the hemp stored and Mr. Gay asked him if he wanted it insured and he told him yes." Q. "Did Mr. Gay make any reply?" A. He said, 'All right.' "

Richard Davidson, a son of Wm. Davidson, testified that he was present and "heard these men ask Mr. Gentry if he wanted the hemp insured and Mr. Gentry told him, 'I certainly do.' "

Bradley Gentry was present a part of the time only and heard his father ask Mr. Gay what he would pay for the hemp and father told him that he would store it. None of the witnesses testify that anything was said as to the price to be paid. Another witness testifies that he stored

a crop of hemp with Mr. Gay the following week and that Mr. Gay told him that Gentry and Davidson had their hemp stored with him and wanted insurance on it, and asked him, "Do you want the same thing on yours?"

D. S. Gay had given his deposition prior to the filing of the amended petition and was asked this question: Q. "At what price per month did you agree to store this hemp?" A. "75c per ton per month." Q. "Did the plaintiffs make any contract with you about the price per month?" A. "No, I don't know that they did; we just charged them what we charged everybody else." Q. "Did you make a contract with the plaintiffs in this action agreeing to maintain insurance on this hemp? Did you agree to do that?" A. "I did not." Q. "Did you or not promise to do any such thing?" A. "I did not make any such promise." Two other gentlemen in his office testified that there was no conversation between plaintiffs and Mr. Gay on the day the hemp was delivered, and Gay's deposition is not clear on this point. Other witnesses testify that the usual and reasonable price charged for storage in that city, exclusive of insurance, is 75c per ton per month. No negligence in connection with the fire is charged. It is urged, however, that no consideration is shown for the contract of insurance, and for this reason the petition was demurrable, and also that appellant was entitled to a directed verdict on the evidence.

There had been no previous dealing between the parties, and appellee does not claim any usage or custom of trade under which warehousemen carried insurance on property in storage; indeed appellant pleaded and offered to prove that the custom was for the owner of the goods in storage to carry such insurance. But appellee pleaded and introduced proof conducing to show a contract for both storage and insurance, each forming a part of the same transaction. If this is true the delivery of the hemp and the mutual agreement of the parties would form a sufficient consideration for the entire contract, and there is no rule of law by which such contract is to be separated and a different consideration shown for each of its several parts.

It is well settled that a contract of this character is enforceable, and where such contract exists, if no insurance is taken out by the warehouseman and the property

stored is destroyed by fire, the builder may have an action for its value.

The rule is thus laid down in 27 R. C. L., page 956:

"A warehouseman is not as a general rule required to effect insurance on the property with a fire insurance association for the protection of the property rights of the bailor. . . . But a duty on the part of the bailee or warehouseman to insure goods for the benefit of the bailor may arise out of the bailor's instructions, the contract of bailment, a custom or usage of trade or the habit of dealing between the parties. . . ."

The rule is stated in similar language in 40 Cyc. 432, each text being fully supported by authorities there cited, and such is the rule in this state.

As said in Vickery v. Lanier, 1 Met. 137:

"A simple request to insure, where no funds are provided or where there have been no previous dealings between the parties or no goods on consignment from which the party requested may reimburse himself, will not of itself devolve upon him the duty to insure, or render him liable for failing so to do. Neither will his subsequent effort to comply with such request have that effect. There must have been an undertaking or promise to insure, made at the time and intended as such by the parties. The party making the request may have had some assurance on which he had the right to rely, and from which he had the right to expect the other party would insure, or in other words, there must in the language of all the books have been an undertaking to that effect. Without it no liability attaches.

"Such promise or undertaking is implied where the course of dealing has been such that the agent has been used to effect insurance, or where he has funds or effects on hand, or even where the bill of lading from which he derives his authority contains an order to insure, or where the general usage is to insure, and in such case he is bound at his peril to insure."

We conclude that the court properly overruled a demurrer to the petition and the motion for a directed

verdict on the evidence, and that the evidence is sufficient to sustain the verdict of the jury, a matter also questioned by appellant.

(3) Appellant insists that the court erred in sustaining a demurrer to the third and fourth paragraphs of the counterclaim and in not instructing the jury as to the effect of the custom or usage therein pleaded. The third paragraph affirmatively alleged that there was no contract of insurance nor agreement to that effect, nor any request made therefor by appellee. This was only an affirmative traverse of the allegations of the petition which had already been denied in the first paragraph of the answer, and as it neither made nor tendered an additional issue, the court properly sustained a demurrer thereto. The fourth paragraph pleaded the existence of a custom among warehousemen not to insure property in storage. It will be observed, however, that appellees' cause of action was based upon an express contract. If such contract was actually made the existence of a custom to the contrary would not militate against it, hence the court properly sustained a demurrer to that paragraph. For the same reason the court properly refused to instruct upon the existence of such custom as under the instructions given the jury were authorized to find for appellee only in the event the contract was made as claimed by him. In this we think the court was correct.

It is also urged that the amount of the verdict is not sustained by the evidence. There is some conflict in the proof as to the value of the hemp, but this is immaterial. It is admitted in the pleadings that there were 15,877½ lbs. of hemp and that it was of the value of $6.00 per hundred, which would amount to $952.65; the counterclaim was $111.44, which, when deducted from $952.65, would leave a balance of $841.21; the verdict was for only $718.51, hence it cannot be said that the judgment was excessive.

Wherefore, perceiving no error, the judgment is affirmed.